IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

MARK M. THOMPSON

    Plaintiff,

v.

BRIDON-AMERICAN CORPORATION

    Defendant.

3:17-CV-40
(JUDGE MARIANI)

## MEMORANDUM OPINION

### I. INTRODUCTION

Presently before the Court is a Report and Recommendation ("R&R") (Doc. 56) by Magistrate Judge Martin Carlson in which he recommends that the Court grant Defendant Bridon-American Corporation's Motion for Summary Judgment (Doc. 38). Plaintiff Mark Thompson has filed Objections to the Magistrate Judge's R&R (Doc. 57) and a brief in support of those Objections (Doc. 58), to which Defendant has filed a response (Doc. 60) and brief in opposition to Plaintiff's Objections (Doc. 61). For the reasons that follow, upon *de novo* review of Magistrate Judge Carlson's R&R, the Court will overrule Plaintiff's Objections and grant Defendant's motion for summary judgment.

### II. ANALYSIS

A District Court may "designate a magistrate judge to conduct hearings, including evidentiary hearings, and to submit to a judge of the court proposed findings of fact and recommendations for the disposition" of certain matters pending before the Court. 28 U.S.C.

§ 636(b)(1)(B). If a party timely and properly files a written objection to a Magistrate Judge's Report and Recommendation, the District Court "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *Id.* at § 636(b)(1)(C); *see also, Brown v. Astrue*, 649 F.3d 193, 195 (3d Cir. 2011); M.D. Pa. Local Rule 72.3.

Plaintiff filed the above-captioned action on January 6, 2017 (Doc. 1) and thereafter filed an Amended Complaint on February 24, 2017 (Doc. 17). Following the completion of fact discovery, Defendant filed a Motion for Summary Judgment (Doc. 38), which the Court referred to Magistrate Judge Carlson for the preparation of an R&R. In October, 2018, the Magistrate Judge issued the R&R (Doc. 56) presently before this Court.

In the R&R, Magistrate Judge Carlson recommends that this Court grant Defendant's motion for summary judgment on the basis that, while Plaintiff has set forth a *prima facie* case of age discrimination under the Age Discrimination in Employment Act ("ADEA"), he has failed to present evidence to support his assertion that Defendant's reason for his termination was pretextual. (Doc. 56, at 12-21).[1]

Plaintiff objects to the Magistrate Judge's conclusion, asserting that Magistrate Judge Carlson erred in finding that Thompson failed to present evidence to support his assertion that Bridon's reasons for terminating him were pretextual because "there is

---

[1] The R&R first recommends that summary judgment be granted in favor of Defendant with respect to Plaintiff's claim for punitive damages. (Doc. 56, at 8-9). Plaintiff does not object to this conclusion, and the Court agrees with the Magistrate Judge's analysis on this issue and will adopt this recommendation.

2

testimony and evidence of record from which a jury could conclude that the reasons asserted for Plaintiff's termination were pretextual." (Doc. 57, at ¶ 3).

On March 26, 2015, Reese Thomas, Regional Vice-President of Human Resources and Administration at Bridon, sent a letter to Mark Thompson, terminating his employment with Bridon American "effective immediately." (Doc. 17, Ex. A) (hereinafter "Termination Letter"). Plaintiff asserts that the reasons set forth in the termination letter were "pretextual in nature and untrue". (Doc. 58, at 7; see also, Doc. 57, at ¶¶ 4-9). Specifically, Plaintiff focuses on the following paragraphs contained in the March 26 letter:

> When questioned by your Executive Manager, you informed him **"IT told me I could use these sites"** and **"The IT Manager put the apps on my phone for me"** and **"The IT Manager told me he uses them all the time"**. These statements proved to be less than truthful when verification was sought.
>
> Secondly, when confronted by your manager regarding past performance issues, in response to a direct question, **"Were you ever on a performance improvement plan"** you stated that **"Rick and George took me to Pasquale's for lunch and gave him the Performance improvement plan, I declined signing this and when I spoke to Reese about this Reese stated: Mark, I always see you doing your job, don't worry about this"**. This is also less than truthful. . . .
>
> . . .
>
> This shows two (2) less than truthful answers in less than 48 hours in response to two separate issues. Bridon American does not tolerate this type of behavior from any employees, much less a supervisor or a person in a position of trust.
>
> Therefore, effective immediately, your employment with Bridon American is terminated.

(Doc. 58, at 7-8) (bold in original letter).

Plaintiff's reliance on this portion of the termination letter fails to demonstrate a triable issue of fact for several reasons.

First, Plaintiff points to the testimony of Reese Thomas, William Youngblood (IT Manager), and Edward Gumina (Plaintiff's supervisor), in an attempt to demonstrate discrepancies in their testimony. Plaintiff argues that "[i]n sum, the testimony of Reese Thomas and Edward Gumina is in direct conflict with the policy of Defendant to allow employees 'free range of usage' of the cell phones and, more importantly, the testimony of William Youngblood." (Doc. 58, at 9). Plaintiff's argument mischaracterizes the contents of the termination letter. Reese's letter states that Plaintiff provided two "less than truthful answers in less than 48 hours in response to two separate issues" and that Defendant "does not tolerate this type of behavior." Thus, this basis for Defendant's decision to terminate Plaintiff was not that Thompson violated a cell phone/data usage policy, but rather that he was allegedly untruthful about his cell phone usage. The contents of the data usage policy itself are not relevant to Plaintiff's current claim. As the Magistrate Judge noted, "Thompson's conclusion that Bridon is wrong about the untruthful statements or the cellphone usage does not, without more, show that Bridon's proffered reason was discriminatory." (Doc. 56, at 17).

Furthermore, Plaintiff's brief in support of his Objections selectively quotes only certain portions of the termination letter which he believes favor his argument. Although Plaintiff focuses on the letter's two "less than truthful answers" and the circumstances

4

surrounding those events, he blatantly ignores other significant portions of the termination letter. The first page of this letter sets forth a number of issues with respect to Thompson's performance at work. The letter begins by stating that "[o]ver the past several weeks, there have been notable declines in your overall performance." (Termination Letter, at 1). The letter further describes that in January, 2015, Thompson was "organizationally reassigned to Operations as part of the restructuring of Supply and Planning." (*Id.*). However, in the "few weeks" following Thompson's relocation, "it was determined you were falling behind on your duties." As a result, Plaintiff's office was again moved and his duties were decreased because "[i]t was believed by learning the aspects of the new duties, and being closer to your manager who would be available to assist you more readily, your performance would improve and slowly the full range of duties would be folded back into your job." (*Id.*). Nonetheless, as the letter explained:

> Prior to moving you to Exeter and decreasing your duties, the Hanover Plant Manager had some concerns about your attention to duty and proclivity to walk around engaging in conversation, engaging other employees in non work related conversations, etc. It seemed there was a issue with your ability to focus on your job responsibilities. Deadlines were being missed, reports were late, and it seemed as though you were always "2 days" from finishing a project, report, etc. The Wire Mill Plant Manager questioned the decision to move you away from the Wire Mill as he felt moving you into the wire stores office would allow you more time to continue these non work related functions. As it turned out, he was correct. The matter of wandering from office to office, engaging in idle conversation and cell phone use increased.

(*Id.*).

Once the party moving for summary judgment has set forth evidence demonstrating the absence of a genuine dispute as to any material fact, the non-moving party must offer specific facts contradicting those averred by the movant to establish a genuine issue of material fact. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990); *see also, Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Therefore, the non-moving party may not oppose summary judgment simply on the basis of the pleadings, or on conclusory statements that a factual issue exists. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A)-(B).

Despite Plaintiff's arguments in support of his position that a genuine dispute of material fact exists as to whether Defendant's reason for his termination was pretextual, Plaintiff does not point to any evidence or testimony to rebut Defendant's assertions that he was having performance issues at work, including that there were "notable declines in [his] overall performance," that he was "falling behind in [his] duties", or that the "matter of wandering from office to office, engaging in idle conversation and cell phone use" recently increased (Termination Letter, at 1). "[T]o avoid summary judgment, the plaintiff's evidence rebutting the employer's proffered legitimate reasons must allow a factfinder reasonably to

6

infer that *each* of the employer's proffered non-discriminatory reasons . . . was either a *post hoc* fabrication or otherwise did not actually motivate the employment action (that is, the proffered reason is a pretext)." *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994) (emphasis in original). The Court in *Fuentes* nonetheless clarified that:

> We do not hold that, to avoid summary judgment, the plaintiff must cast doubt on each proffered reason in a vacuum. If the defendant proffers a bagful of legitimate reasons, and the plaintiff manages to cast substantial doubt on a fair number of them, the plaintiff may not need to discredit the remainder. That is because the factfinder's rejection of some of the defendant's proffered reasons may impede the employer's credibility seriously enough so that a factfinder may rationally disbelieve the remaining proffered reasons, even if no evidence undermining those remaining rationales in particular is available.

*Id.* at 764 n.7. Despite the fact that Plaintiff need not cast doubt on each proffered reason in a vacuum, he has entirely failed to cast doubt, let alone even address, any substantial reason that Defendant relies on in setting forth a non-discriminatory reason for terminating Thompson: his poor job performance. Although Plaintiff devotes a significant amount of time disputing the veracity of one portion of Defendant's termination letter and the accuracy of the testimony of certain Bridon employees, these arguments only address the issues surrounding the two "less than truthful answers"; none of Plaintiff's arguments or supporting evidence address his alleged performance deficiencies which also formed a basis for his termination.

It is undisputed that Edward Gumina, Bridon's Vice President of Operations in March, 2015, testified that the decision to terminate Thompson's employment was made by himself and Reese Thomas. (Doc. 38-3, at ¶ 30; Doc. 40, at ¶ 30). During his deposition,

7

Gumina testified that Plaintiff was discharged "as a result of everything rolled up together" and that when he discussed terminating Plaintiff with Thomas, they discussed Thompson's "track record, he continued to not be able to do his job functions." (Dep. of Gumina, at 24). Gumina later testified that the "two untruthful answers" were "part of" why Thompson was fired, but that "[i]t's overall lack of job performance and overall not getting the job done and lying." (*Id.* at 36-37). Similarly, Thomas testified that only "one of the reasons" Plaintiff was terminated was because of "less than truthful" answers on the two occasions set forth in the termination letter. (Dep. of Thomas, at 43). Both Gumina and Thomas testified that Thompson's age was never discussed, considered, and played no role in their decision to terminate Plaintiff. (Dep. of Gumina, at 39-40; Dep. of Thomas, at 47). In addition, these assertions are supported by Plaintiff's own deposition. During Thompson's deposition, he testified that after he was handed the termination letter on March 26, 2015, and "asked why" he was terminated, Gumina "said 'You're just – your job is just not up to par like it used to be.'" (Dep. of Thompson, at 37).

Plaintiff has provided no evidence to create a triable issue as to whether Gumina and Thomas' proffered reasons for terminating Thompson due to poor job performance were a pretext for age discrimination. As previously noted, the termination letter includes assertions that there were "notable declines in [Thompson's] overall performance," that Thompson was "falling behind in [his] duties", or that the "matter of wandering from office to office, engaging in idle conversation and cell phone use" recently increased (Termination

8

Letter, at 1). As set forth above, Gumina and Thomas' deposition testimony generally reflects the same employment issues and concerns as those set forth in the termination letter.

In addition, although there is testimony of record from several employees at Bridon that Thompson was not performing at the expected level, Plaintiff has provided no testimony or other evidence to rebut these statements. Gumina testified that he had complaints about Thompson's job performance and that "one of the complaints was I couldn't find him or couldn't get a hold of him and neither could Dave White [Thompson's supervisor] so I had all the planners get cell phones." (Dep. of Gumina, at 20). As previously stated, Gumina also testified that in a meeting with Thomas addressing whether to terminate Thompson, they discussed Thompson's "track record, [and that] he continued to not be able to do his job functions." (*Id.* at 24). Gumina later reiterated that Thompson's "overall lack of job performance and overall not getting the job done and lying" were the reasons for Thompson's termination, (*id.* at 36-37) and that if Thompson "had never been on a [Performance Improvement Plan] before, it's possible he might have gone on a PIP. But because he'd been on a PIP already, it's not an option," (*id.* at 37). Ryan Grochal, Thompson's supervisor as of December, 2014, testified that:

> I actually had asked for a performance improvement plan, but I was told at that time that Mark [Thompson] had already been on a performance improvement plan. I talked to Mark about that. He said that he hadn't signed the performance improvement plan so I was actually trying to, you know, see if I could put him on the performance improvement plan, but I was unable to. So it was after that,

through Ed Gumina, he had told me that we're not going to move a bad performance to a different department so. . .

(Dep. of Grochal, at 17, 31). Similarly, Quintin Czekalski, another employee at Bridon, testified that Dave White, their direct supervisor, "was aware that there was an issue" with Thompson, and that Czekalski received complaints about Thompson's job performance, which he discussed with "the supervisors" and that he and the supervisors "did a lot of the fixing ourselves." (Dep. of Czekalski, at 12).

Plaintiff has not offered any evidence to rebut the testimony of Gumina, Grochal, or Czekalski, or to rebut the assertions set forth in the termination letter with respect to his job performance. When Thompson was asked during his deposition about certain statements in the termination letter regarding his job performance in 2015, although he stated that he "disagree[d]" with the statements, his answers did not provide any substantive denial of the allegations or explanation with respect to why the allegations were incorrect or untrue. For example, during his deposition, Thompson gave the following responses when asked about the allegations in the termination letter with respect to poor job performance:

> **Q.** The next sentence it says: [As read] "Deadlines were being missed, reports were late, and it seemed as though you were always two days from finishing a project report, et cetera." Do you agree with that or disagree with that?
>
> **A.** Disagree. If it was late, the mill wouldn't run. You had to have a plan every day. So if I was two days behind, that means the wire was two days behind. So that's completely false.
>
> **Q.** It says: [As read] "The wiring mill plant manager questioned the decision to move you away from the wire mill, as he felt moving you into the wire store's office would allow you more time to continue these nonwork-related functions."

10

And then it gets -- then skipping to section: [As read] "The matter of wandering from office to office engaging in idle conversation and cell phone use increased." Do you agree or disagree with that?

A. Disagree. They moved me to the wire mill plant because Ed Wonyo retired. When Ed Wonyo retired, the only other man that ever did Ed Wonyo's job was me. And they didn't want to put anybody else in Ed Wonyo's position because then they would have had to pay him Ed Wonyo's salary, which I don't know what it was, but it was a little bit more than what a strander made. So they moved me down there to do Ed Wonyo's job, which meant planning out the wire for the Exeter machine, plus did the planning for my regular job. That's the reason why they moved me down there.

(Dep. of Thompson, at 54-55). Thompson's responses do not directly address the allegations of poor job performance set forth against him in the termination letter, including any denial that he "wander[ed] from office to office engaging in idle conversation" or that his cell phone usage increased[2]. Thompson further does not deny that he was missing deadlines and submitting reports late, instead only stating that "if I was two days behind, that means the wire was two days behind."

Apart from Thompson's testimony, which does not present any adequate denial of Defendant's assertion that his overall job performance was not satisfactory and not improving, Plaintiff has not attempted to offer any other evidence to rebut Defendant's assertions that he was not adequately performing his job functions, such as depositions of other supervisors or co-workers, or any records demonstrating favorable job reviews

---

[2] As noted by William Youngblood in his deposition, during the first quarter of 2015, Thompson's "phone stuck out as having high data usage" and the data usage was "abnormally high for that phone." (Dep. of Youngblood, at 14).

11

contemporaneous to the time of his termination. As the Magistrate Judge explained after careful analysis which this Court adopts:

> In the face of this significant testimony, which tends to show that multiple people at Bridon were dissatisfied with Thompson's performance, Thompson provides little evidence beyond his subjective impression from which a factfinder could reasonably disbelieve Bridon's articulated reason. Thompson argues that he successfully completed his PIP in 2013, and that his job performance was "exemplary." (Doc. 45, at 12; Doc. 17, ¶ 7). Additionally, he flatly asserts that the defendant's reasons for termination set out in the letter he received are "simply untrue." (Doc. 45, at 14). However, other than his own testimony, Thompson offers no evidence to support his assertions, or to contradict the testimony of any of Bridon's employees regarding the numerous issues repeatedly brought up by his supervisors. Further, there is no indication that Bridon relied on the 2013 PIP as a reason for Thompson's termination. The record before us shows that Bridon terminated Thompson after multiple complaints from his supervisors of consistently poor job performance.

(Doc. 56, at 19).

Aside from Plaintiff's general repeated assertions in his brief in opposition to summary judgment (Doc. 45), answer to Defendant's statement of material facts (Doc. 40), and brief in support of his objections to the R&R (Doc. 58), that he believes Defendant's reasons for terminating him were "pretextual", he has not offered any evidence to support this argument and thereby create a genuine dispute of material fact for trial. In particular, Plaintiff has failed to provide this Court with any record evidence to rebut Defendant's proffered legitimate reasons such that a factfinder could reasonably infer that Defendant's proffered non-discriminatory reason, *i.e.* poor job performance, was a pretext for terminating Thompson based on his age. The Court emphasizes that it is not making credibility determinations as to the veracity of any of the afore-quoted individuals' testimony or the

12

contents of the termination letter. However, Thompson has not come forward with any specific facts or evidence to rebut the statements of other Bridon employees or those in the termination letter with respect to his poor job performance, and thus has failed to satisfy his burden on summary judgment of demonstrating a triable dispute of fact. *See Celotex*, 477 U.S. at 332 (Brennan, J., dissenting)("Accordingly, the nonmoving party may defeat a motion for summary judgment that asserts that the nonmoving party has no evidence by calling the Court's attention to supporting evidence already in the record that was overlooked or ignored by the moving party.").³

Plaintiff's objections to the R&R and brief in support thereof also argue that the affidavits of two former Bridon employees, John Lunski and Earl Jones, demonstrate pretext. (*See* Doc. 58, at 5-7). In his brief in opposition to summary judgment, Plaintiff asserts that "at or about the same time that Plaintiff was terminated, 2 additional employees, both within the protected class, were suddenly and unknowingly terminated as well." (Doc. 45, at 10; *see also*, Doc. 58, at 5). Plaintiff provides no legal authority in his brief in opposition to summary judgment or brief in support of his objections to explain why the Court should accord Lunski and Jones' "terminations" from Bridon any importance here.

---

³ Although this Court cites to Justice Brennan's dissent to demonstrate why Plaintiff has not met his burden on summary judgment, the Third Circuit has repeatedly cited to Justice Brennan's dissent in evaluating motions for summary judgment and has made clear that "Justice Brennan's dissent does not differ with the opinion of the Court regarding the appropriate standards for summary judgment", *In re Bressman*, 327 F.3d 229, 237 n.3 (3d Cir. 2003). *See also, Wisniewski v. Johns-Manville Corp.*, 812 F.2d 81, 84 n.2 (3d Cir. 1987) ("Justice Brennan agreed with the majority's articulation of the appropriate legal standard.").

However, the Court assumes, as did the Magistrate Judge (Doc. 56, at 20), that this argument is premised on the legal theory that a plaintiff can survive summary judgment by "com[ing] forward with sufficient evidence from which a factfinder could reasonably conclude that an illegitimate factor more likely than not was a motivating or determinative cause of the adverse employment decision" such as "that the employer has discriminated against other members of his protected class or other protected categories of persons", *Fuentes*, 32 F.3d at 765.

Magistrate Judge Carlson succinctly explained why the affidavits of Lunski and Jones, without more, fail to create a triable issue of pretext:

> Although Mr. Jones states that he believes he was forced to retired due to his age, (Doc. 46, at 46), Bridon stated that his position was being eliminated. There is no evidence to suggest that this was due to Jones' age, or that Jones was replaced with a person who was younger than he was. Thus, Jones' affidavit does not support Thompson's argument that Bridon's reason was pretextual. With respect to Mr. Lunski, Lunski claims that his administrative leave and forced retirement were based on a false allegation of negligent supervision, and that he was forced to retire due to his age. (Doc. 46, at 38). However, other than Lunski's belief that he was forced out because of his age, there is no evidence from which a factfinder could conclude that Bridon's reason was actually discriminatory. To the contrary, Bridon has produced evidence that the company employs well over fifty employees, all over the age of fifty years old. (Doc. 49-1, at 1-10). Given the overall record, these allegations are insufficient to allow a factfinder to either disbelieve Bridon's reason for terminating Thompson's employment, or to find that the real reason for his termination was more likely than not discriminatory animus.

(Doc. 56, at 20-21). The Court agrees with the Magistrate Judge's reasoning and conclusion. The affidavits provided by Plaintiff are not relevant to his current action for the reasons set forth in the R&R. Plaintiff's reliance on the subjective beliefs of Lunski and

14

Jones that they were terminated due to their age, without any supporting evidence, is without merit. There is no indication that either individual filed an EEOC or PHRC charge, and there has been no determination, either judicially or through the EEOC or PHRC, that either of these individuals were discriminated against due to their age or any other protected reason. Plaintiff's submission of Lunski and Jones' affidavits, and Lunski and Jones' mere assertions therein of their belief that they were terminated based on their age without any evidence to support these conclusions, fails to provide "sufficient evidence from which a factfinder could reasonably conclude that an illegitimate factor more likely than not was a motivating or determinative cause of" Bridon's decision to terminate Thompson.

Here, Plaintiff has pointed to no evidence to demonstrate that Bridon did not in fact rely on its articulated reason, to wit, poor job performance over a period of several months, when terminating his employment. Thus, for the aforementioned reasons, as well as those set forth in the R&R, Plaintiff has failed to demonstrate a triable dispute of fact with respect to whether Defendant's proffered reasons for terminating Plaintiff due to his poor job performance were a pretext for age discrimination. Summary judgment will accordingly be entered in favor of Defendant.

## III. CONCLUSION

For the reasons set forth above, upon *de novo* review of the R&R (Doc. 56), the Court will adopt the R&R in its entirety. Summary judgment will be granted in favor of Defendant Bridon American Corporation and against Plaintiff Mark Thompson. A separate Order follows.

Robert D. Mariani
United States District Judge